JULIA STELLA DE ORTIZ, Petitioner, *v.* DISTRICT COURT OF HUMACAO, Respondent.

No. 741. Argued December 1, 1930.—Decided December 19, 1930.
Rehearing denied January 14, 1931.

*Arturo Aponte* for petitioner. *Luis Toro Cabañas* for plaintiff in the main action.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

In this case application has been made to us for a writ of certiorari directed to the District Court of Humacao, and the petitioner, Julia Stella de Ortiz, essentially alleges the following grounds:

A suit for temporary maintenance (*alimentos provisionales*) was brought in the District Court of Humacao against Julia Stella de Ortiz by Monserrate Carrasquillo, as mother with *patria potestas* over Nilda Monserrate and Francisco Juan Ortiz Carrasquillo, minors. A monthly allowance of $200 was claimed. It is alleged that the judge made an order which is transcribed, wherein he directed the first appearance of the parties after the defendant had been served with a copy of the complaint; that the court, without the defendant being so summoned or served, tried the case, without jurisdiction, and gave judgment against the petitioner herein, having only before it an affidavit of service of the summons, which is copied, wherein it is not stated that the defendant was served personally or that a copy of the complaint had been delivered to her; and that although the defendant also has a remedy by appeal, such remedy would not be adequate nor efficient, as an appeal would not stay the execution of the judgment.

The writ was issued and the record of the proceedings below was sent up to this court.

The plaintiff intervened in the proceeding herein and opposed the petition. She set up the following: She denies that Julia Stella de Ortiz has not been served with notice of the proceedings sought to be reviewed; she alleges that the formal summons appears from the original affidavit of service and from the supplemental affidavit made a part of the record of said proceedings; she denies all other averments of the petition and she alleges that certiorari is not

the proper remedy in this case because the petitioner has another adequate and speedy remedy at law, the petition is insufficient, and it is sought to secure a stay of the proceeding in an indirect way.

A hearing was had in this court.

The following are the most interesting particulars appearing from the record:

(a) Order of the court dated October 20, 1930.

(I) "Having considered the verified complaint filed by the plaintiff in the above entitled cause, in which she claims, as mother with *patria potestas* over her minor children, Hilda Monserrate and Francisco Juan Ortiz Carrasquillo, an allowance for the temporary maintenance of the said minors amounting to $2,400 annually to be paid by the defendant as the grandmother of the said minors in monthly instalments in advance at the rate of $200 during the stay of said minors in Humacao and until they become of age, and that the said allowance be paid in cash to be deposited each month in advance in the office of the clerk of this court, where it shall be kept at the disposal of the petitioner for the benefit of her aforesaid children; and having considered also the prayer included in the said complaint for the setting of a day for a preliminary appearance of the parties hereto, the court, pursuant to the provisions of section 84 of the Special Legal Proceedings Act and of sections 4 and 5 of the Unlawful Detainer Act, hereby orders the parties hereto to appear for a preliminary hearing before this court on November 3, 1930, at 9 a. m., and file allegations in support of their respective claims, and a copy of the complaint filed by the plaintiff herein shall be served on the defendant, who shall be cautioned that upon her failure to appear, either in person or by her lawful representative, on the day and at the hour above mentioned, the said minors shall be granted the temporary maintenance sought by them, without further summons or hearing, in accordance with the petition herein.

"The clerk shall issue the proper writ in compliance with this order."

(b) Affidavit of service:

(II) "I, Luis Ríos Algarín, declare on oath: That my name is as above shown, that I am over 21 years of age and a resident of San Juan; that I am not a party to or have any interest in the action referred to on the back of this affidavit of service; that at.

10 o'clock a. m. on October 20, 1930, I received the original summons shown on the back of this affidavit and that at 12:30 o'clock p. m. on the same day I served the summons on Julio Ortiz Stella, who lives with the defendant Julia Stella de. Ortiz, in Humacao, Puerto Rico, and was on that day and at that hour at her residence, and delivered to the said Ortiz Stella a true and faithful copy of the said summons, which copy I left with him to be delivered to the defendant, whom I was not allowed to see or serve with the said summons, as the said Ortiz Stella repeatedly assured me that said defendant was sick in bed and could not receive me, and he promised me that he would deliver to her the said copy which I had just delivered to him at that moment.

"In witness whereof, I subscribe the present affidavit at San Juan, Puerto Rico, this 1st day of November, 1930."

(c) Additional or supplemental affidavit of service:

(III) "I, Luis Ríos Algarín, declare on oath: That my name is as above shown, that I am over 21 years of age and a resident of San Juan; that I am not a party to or have any interest in the above entitled cause; that at 10 o'clock a. m. on October 20, 1930, I received the original summons issued by this court for a preliminary hearing in the said cause and summoned the parties to appear at such preliminary hearing; and that on the same day, October 20, 1930, at 12:30 o'clock p. m., I notified the said summons to Julio Ortiz Stella, who is of age and resides and was on that day and at that hour in the home of the defendant Julia Stella de Ortiz, in Humacao, Puerto Rico, as the person in charge or the agent of the said defendant, having delivered to said Ortiz Stella a true and faithful copy of the said summons and of the complaint filed in the above entitled cause, which copies I left with him then and there to be delivered to the said defendant, whom I was not allowed to see or personally serve with the said summons and copy of the said complaint, as the said Ortiz Stella, who is a son of the defendant, repeatedly assured me that she was sick in bed and could not receive me, and promised me that he would deliver to her the said copies which I had just deliver to him for her; that it was actually impossible for me to see personally the said defendant owing to her sickness and because I was not allowed to do so by her said son and representative at that moment, Julio Ortiz Stella; that the foregoing is the truth and nothing but the truth as regards the facts herein, and that if they were not so set forth in the original affidavit of service filed by me in the present case it was due to an inadvertent or

involuntary omission on my part, owing to the haste with which I prepared the said affidavit; and in order to correct that omission and to make the facts conform to the truth I sign this amended affidavit at Humacao, P. R., on November 24, 1930.''

The question has been discussed in this case whether the summons must be served personally, and whether the service can be made on a person other than the defendant.

Title VII of the Special Legal Proceedings Act, approved March 9, 1905, establishes, what might be called the procedure to be followed in claims for temporary maintenance. Section 84 of the said act is as follows:

''Sec. 84. All claims for temporary maintenance shall be governed by the procedure provided for actions of unlawful detainer. An appeal lies against a judgment rendered in this class of actions. But such appeals shall not be an obstacle to the execution of the judgment.''

On the same date, or March 9, 1905, there was enacted the Unlawful Detainer Act, in which we find the following sections:

''Sec. 4. The action shall be commenced by filing a complaint prepared in accordance with that prescribed in the Code of Civil Procedure for an ordinary action, and, after the filing thereof, the plaintiff and defendant shall be ordered to appear for a hearing which must be held within ten days after the commencement of the action.

''Sec. 5. If the defendant can not be found at the place of trial, or if he resides elsewhere, the summons shall be served upon the person who, in his name, is in any way in charge of the property at said place. When summoning the defendant he shall be cautioned that in case of his failure to appear, either in person or by lawful agent, judgment of unlawful detainer will be taken against him without further summons or hearing.''

This procedure is applicable to an action for temporary maintenance, which perhaps involves greater urgency than an action of unlawful detainer and better justifies the shortening of terms and the omission of unessential proceedings.

It is .unnecessary to resort to the precepts of the old Spanish Law of Civil Procedure, since the action in question is well defined in our present legislation.

The process, as served, was correct; and the court, by virtue thereof, acquired jurisdiction of the case.

From the original affidavit of service of the summons it did not appear that the defendant had been served with a copy of the complaint. But from the record of the proceedings under review there appears to have been filed on November 24, 1930, an amended affidavit of service, in which it is stated that Julio Ortiz Stella, of age, who was at the home of the defendant Julia Stella de Ortiz, "as the person in charge or the agent of the said defendant" and who assured the process server that the defendant was sick in bed and could not receive him, was served with copies of the summons and of the complaint which the said Julio promised to deliver to the defendant. This amended affidavit was subscribed by Luis Ríos Algarín, who served the summons.

Application may be made in the case at bar of the general doctrine laid down in *Puigdollers* v. *Monroig,* 14 P.R.R. 756, 757, in which it was held that an action for alimony should be governed in respect to the filing of the complaint and the introduction of evidence by the rules established for the action of unlawful detainer.

The writ issued must be discharged.

#### ON MOTION FOR REHEARING.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

We are asked to reconsider our judgment of December 19, 1930.

The petitioner says that the only affidavit of service which the District Court of Humacao considered was the original one, which failed to state that a copy of the complaint had been served; that this court is precluded from taking any other certificate into consideration in its decision on certio-

rari; that the District Court of Humacao lost all jurisdiction because its order had been appealed from and because a writ of certiorari had been issued; that, once an appeal has been taken and the writ issued, neither the lower court nor the parties are entitled to disturb the judgment by a new affidavit of service of the summons; that the only record to be considered by us is that which existed at the time of the rendition of the judgment, and that no affidavit of service of process giving jurisdiction to the court appears from such record. The petitioner further states that the new affidavit fails to comply with the requirements of the statute and that it fails to state that Julio Ortiz was the person in charge of defendant's property in her name or in what manner he was so in charge, and that, far from stating that the defendant was not present on the property, it is asserted that she was so present and that she was ill. We are cited, in support of petitioner's contentions, to the decision of this court in *Hernández* v. *Rosado et al.*, 22 P.R.R. 360, 361, where, construing section 5 of the Unlawful Detainer Act, it was held that when service is not made on the defendant personally the return must show that process was served on the person "in charge of the property in his name," in order that the court may acquire jurisdiction.

The construction urged by the petitioner would, of course, have the effect of destroying the letter, the spirit and the purpose of section 84 of the Special Legal Proceedings Act. If such a construction were to be adopted, no summons could be served where there is no property or person in charge in the name of the occupant.

We can not create for judicial procedure a world, not only apart from that in which we live, but in conflict with and antagonistic thereto; a terminology and a language of mysterious meaning, beyond the reach of the uninitiated, and at variance with the realities of life; nor can we sacrifice truth, as well as reality and justice, to exaggerated techni-

calities. This does not mean at all that we could or should dispense with the rules of procedure or with the requirements prescribed by law for the administration of justice. Civil and criminal proceedings concern themselves with abnormal situations, wherein the affairs of man do not take the usual course, and it is evident that in such cases the State, as sovereign, must regulate the form of the demand, the steps to be taken, the form of prosecution and the methods of proof, in order to make effective the rights involved; hence legal procedure and its rules. But it must not be forgotten that the law *lives* in the reality, with which it is inseparably connected.

We can not go back to the primitive Roman *formulae*, much less to the conditions deriving from such *formulae*, and subordinate to a mere error of language so important a thing as the effectiveness and supremacy of the law. This is why there have been incorporated in the law such enactments as sections 122, 140 and 142 of the Code of Civil Procedure of Puerto Rico, which read as follows:

"Sec. 122. In the construction of a pleading, for the purpose of determining its effect, its allegations must be literally construed, with a view to substantial justice between the parties.

"Sec. 140. The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of a party, or by correcting a mistake in the name of a party, or a mistake in any other respect, and may, upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow upon such terms as may be just, an amendment to any pleading or proceeding in any other particulars; and may, upon like terms, allow an answer to be made after the time limited by this Code, and also relieve a party, or his legal representative, from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; and whenever, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order, or proceeding complained of, was taken, the court, or the judge thereof,

in vacation may grant the relief upon application made within a reasonable time, not exceeding six months after the adjournment of the term. When from any cause the summons in an action has not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representative, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action. When in an action to recover the possession of personal property, the person making any affidavit did not truly state the value of the property, and the officer taking the property, or the sureties on any bond or undertaking, is sued for taking the same, the officer or sureties may, in their answer, set up the true value of the property, and that the person in whose behalf said affidavit was made was entitled to the possession of the same when said affidavit was made, or that the value in the affidavit stated was inserted by mistake, the court shall disregard the value as stated in the affidavit, and give judgment according to the right of possession of said property at the time the affidavit was made.

"Sec. 142. The court may, in every state of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

This spirit of liberality, which can not in any way be considered as an abandonment of the standards of legal procedure, makes for a humane interpretation of the law. As far as the jurisprudence of Puerto Rico is concerned, we may safely assert that such is the tendency of our decisions.

In *Rodríguez et al.* v. *Cuevas Zequeira,* 25 P.R.R. 751, 756, this court said:

"Defendants had actual notice of the proceeding and were duly cautioned against the consequences of default, yet they chose to stand upon technical questions of detail in the form of the summons, and have not shown even in this court, that they suffered any prejudice at all, or that they have or ever had any defense whatever on the merits. The present proceeding is plainly an effort to delay the execution of the judgment rendered in the district court, and the facts shown by the record do not disclose a proper case for relief by certiorari."

And further on the following was quoted from the case of *Addison* v. *Burt,* 42 N. W. 278:

"We can discover no ground for the reversal below. Even if there had been formal irregularities, it is required by law that on *certiorari* there shall be no reversal, except for matters of substance affecting the justice of the cause. We find nothing out of the way in the trial before the justice, and the record shows clearly a grievous wrong done to Mr. Burt for which he should have redress. The defense was absolutely destitute of merits, and had the circuit court affirmed the judgment, and Addison brought it here, we should have had no hesitation in visiting on him the consequences of a vexatious appeal. The writ of *certiorari* should not be prostituted for such purposes. The judgment of the circuit court must be reversed, and that of the justice affirmed, with costs of all the courts."

The intention of the law has been to render the proceedings for temporary maintenance simplified and speedy, in keeping with their aim and purpose and with the urgency of the need to be satisfied. With that end in view, they have been placed on the same footing as the cases of unlawful detainer. This does not mean, however, that such assimilation in the procedure must be carried to the point where, in the absence of an estate or of an agent acting for the owner, no process can be served in the said proceedings.

In the instant case it appears that the person serving the summons went to the residence of the defendant, whom he failed to find; but he saw Julio Ortiz, who stated that the defendant was sick and could not be seen and did not allow the process server to see her but took the papers and promised to deliver them to the party concerned. We think that no more than that could be done or expected. The situation would be different in a case of unlawful detainer. In the latter case, the person to be served with the summons by the process server must be the man in charge of the property, in the name of the occupant, who is notified in his capacity as such occupant, and in that capacity and by reason of his connection with the property he is summoned to appear.

The decision of this court cited by the petitioner (*Hernández* v. *Rosado et al.*, 22 P.R.R. 360) refers to an action of unlawful detainer where strict application was made of the statutory provision which requires that the person to be served with the summons must be, in case the defendant is not in the property, the person in charge thereof in his name. We have already stated that this condition is to be required in cases of unlawful detainer in which there must necessarily be an estate and somebody who, in the owner's absence, should represent him. But this can not be exacted as an indispensable requirement in other cases, for example, those of temporary maintenance where, to enforce the judgment, no eviction or dispossession would lie.

The petitioner is mistaken as regards the nature of the supplemental affidavit of service. That affidavit proves a fact, namely, that a copy of the complaint was served, and this fact existed from the time of the original certificate. It is the existence of such fact what is really important. It is inconceivable that, after reading the amended affidavit, we could hold that a copy of the complaint had not been served with the summons. Such a thing could not be demanded of us, nor could we grant it.

The petitioner, who urges that we should not consider any fact in this case unless it occurred prior to the making of the order under review, finds herself compelled to invoke facts which transpired subsequent to the said order, as, for instance, her appeal filed on November 22, 1930. In judicial proceedings, a fact can not be entirely isolated, disregarding all questions as to source, antecedents, attendant circumstances or consequences, just as this can not be done in any of life's aspects.

What the petitioner calls a new affidavit of service does not nullify the judgment; in the first place, because it is not a *new* affidavit but an amendment to the original affidavit

of service, and secondly, because it really does not introduce any new matter affecting the rendition of the judgment.

The motion for rehearing must therefore be denied.